## NATIONAL HEELING–MACH. CO. et al. v. ABBOTT.

(Circuit Court, D. Massachusetts. February 2, 1895.)

### No. 495.

1. PATENTS—INFRINGEMENT SUITS—DELAY AND ACQUIESCENCE.

A delay of five or six years, after knowledge of defendant's alleged wrongful acts, *held* not to affect the right to a preliminary injunction, where his proceedings had been the subject of dispute and negotiation during the whole period.

2. SAME—PRELIMINARY INJUNCTION—ESTOPPEL.

Neglect for over 10 years, by patentees who have assigned their patent in trust, to inquire into the terms of licenses which they know have been granted to third parties by their trustee, estops them, when sued for infringement by such licensees, from denying knowledge of the exclusive character of such licenses.

3. APPEALS FROM PRELIMINARY INJUNCTIONS.

Rule 22 of the circuit court of appeals for the First circuit (11 C. C. A. cix.; 47 Fed. x.) is to be accepted as an indication that the court will support in all respects the policy of the seventh section of the act establishing the circuit courts of appeals, as far as practicable, and will avoid closing the business of any defendant by an interlocutory injunction, when an appeal is taken and a supersedeas bond may be allowed, except in peculiar cases, where justice clearly requires otherwise.

This was a bill in equity by the National Heeling-Machine Company and the Ross Heel Company against William T. Abbott for alleged infringement of letters patent No. 220,920, issued October 28, 1879, to Henry A. Henderson and Hollis C. Paine, for an improvement in heel-trimming machines. The cause was heard on a motion for a preliminary injunction.[1]

It seems that the original purpose of the patentees, Henderson and Paine, was the trimming of wooden heels, but after the issuance of the patent it was discovered that their machine could be used in connection with finishing leather heels. Shortly after the issuance of the patent, and on November 5, 1879, the patentees assigned the entire patent to their attorney, F. F. Raymond, as trustee, but without indicating on the face of the assignment who were the beneficiaries of the trust. On the day of the execution of the assignment Raymond granted an exclusive license to the patentees to use the invention for the purpose of making wooden heels only. This license provided that, on the application of Henderson and Paine, a new license should be granted to any one designated by them; also, that the new license, when issued, should cancel the one in existence. It appears that the general purpose had in view by the parties was that a corporation should be formed for the purpose of trimming leather heels, and that the patent, so far as it related to this use, was to be employed in forwarding this purpose. The National Heeling-Machine Company was accordingly formed, and subsequently the patent was assigned to it by the trustee. There is no controversy in relation to the leather-heeling business. In relation to the trimming of wooden heels, the purpose seems to have been that the patentees, Henderson and Paine, were to retain entire control thereof; and it was contended in this suit that this intention was not carried out by the papers executed. They denied knowledge of the fact that their assignment to Raymond in trust was an assignment of the whole patent, and testified that they signed the paper in blank, and it was afterwards filled up by Raymond. Both of them deny knowledge of the terms of Raymond's license to them, declaring that they had no knowledge or recollection of ever having signed such an instrument. On April 24, 1880, Raymond, as

---

[1] For opinion on final hearing, see 70 Fed. 54.

trustee, gave a license to one G. M. Blanchard, in the same terms as that previously executed to Henderson and Paine. Blanchard afterwards duly surrendered this license, and on September 25, 1886, Raymond issued a new license in the same terms to G. W. Harnden. Harnden subsequently surrendered his license, and simultaneously, December 7, 1893, Raymond issued to the Ross Heel Company an exclusive license of like character. The real controversy in the case was between the Ross Heel Company and the defendant, Abbott. Henderson and Paine both denied knowledge of the issuance of the licenses to Blanchard and Harnden in the exclusive form in which they were issued; and on April 25, 1893, Paine assigned to Henderson all his right, title, and interest in the patent; and Henderson, on May 23, 1893, executed a license to defendant, Abbott, to make and use the patented machine for the purpose of trimming wooden heels only. It seems that the exclusive right of trimming wooden heels was exercised under the Blanchard and Harnden licenses without interference until the year 1889, when Henderson commenced to manufacture in a small way. The evidence showed that, from the time this became known, his proceedings were the subject of dispute and negotiation up to the time this bill was filed against the present defendant.

At the hearing on the motion for preliminary injunction, counsel for defendant contended that the equitable, if not the legal, title to the patent, in so far as the trimming of wooden heels was concerned, remained in Henderson and Paine, and that Raymond had no right to execute the licenses to Blanchard, Harnden, and the Ross Heel Company; and they cited the cases of Shaw v. Spencer, 100 Mass. 382, and Duncan v. Jaudon, 15 Wall. 165, to the point that these parties were put upon their guard, and were bound to inquire as to the character and limitation of Raymond's trust, and if they accepted the licenses without inquiry, they took them at their peril, and acquired no rights under them. After the first argument, the court, not being satisfied as to the grounds for a decision, requested counsel to attend a further hearing, which was accordingly had. Defendants then cited the cases of Railroad Co. v. Durant, 95 U. S. 576, and National Bank v. Insurance Co., 104 U. S. 54.

John Lowell and Clarke, Raymond & Coale, for complainants.
Lung & Welch, for defendant.

PUTNAM, Circuit Judge. On examining the record in this case after the first hearing, I found it involved questions which had not been opened to me, and therefore I asked counsel to attend a rehearing. I said at the first hearing that if Shaw v. Spencer, 100 Mass. 382, applied, the case was apparently full of disputed facts at all essential points. For this reason, and especially in view of the fact that a hearing on the merits could be brought on so soon, I doubted whether I would be justified in granting a temporary injunction. Since then, Railroad Co. v. Durant, 95 U. S. 576, 579, and National Bank v. Insurance Co., 104 U. S. 54, 63, have been cited to me as showing that Shaw v. Spencer does apply; but the examination of the record to which I have referred, and also the arguments at this rehearing, make the case clear for the present matter, notwithstanding Shaw v. Spencer. I am now satisfied that this case rests in paper, and that there is no difficulty in my disposing of it. To say nothing of the disputed license of November 5, 1879, it appears that the license to Blanchard was granted as early as April 24, 1880, giving him the exclusive right so far as wooden heels were concerned. It also appears that both Paine and Henderson knew that a license was granted, or was intended to be granted, although it is disputed whether they knew the particulars touching it. This license, on its face, contemplat-

ed the substitution of other licenses on its surrender; and, by various successive surrenders, the complainants became the holders of a license, in substance the same as that to Blanchard, and in lieu thereof. Each of these various transactions was, on its face, a new and separate one; yet the complainants in this case are in substance the assignees of Blanchard and of his license, and the various licenses constitute one series of transactions. In this manner, the right of the complainants originated in, and relate to, the license to Blanchard. The exclusive right thus granted was exercised without interference until 1889, when Henderson commenced to manufacture in a small way. It is claimed that his manufacture was secret. But, without investigating this, it is enough for the present purpose to say there is no question that, from the time he commenced this manufacture, or from the time it became known, his proceedings have been the subject of dispute and negotiation; so that they cannot be considered as affecting, through acquiescence or otherwise, the rights of the parties as they were in 1889. In other words, so far as this bill is concerned, we stand as though we were in 1889 instead of 1895. Now the favorite occasion for the exercise of the power of granting temporary injunctions is when an exclusive and quiet enjoyment of a right for years is interrupted; so that the facts already referred to, and which cannot be disputed, would be sufficient to authorize me to grant the complainants' motion.

But the case justifies some further consideration. Notwithstanding Paine and Henderson dispute that they knew the terms of the license to Blanchard, yet they cannot dispute that they had an opportunity of knowing them. If either Paine or Henderson, or their assigns, had, in 1889, or any time thereafter, brought a bill in equity to set aside the license to Blanchard, or any of the licenses granted in succession to it, for any of the reasons now interposed by the defendant, the bill would clearly and certainly be subject to the defense of laches. The equities are the same as they would be on such a bill, except that, at the present hearing, the defense of laches is available to the moving party instead of to the defending party. To this I can see no answer in behalf of the defendant. The injunction pendente lite will be allowed; but rule 22 of this court (11 C. C. A. cix.; 47 Fed. x.) must be accepted as an indication that the judges in this circuit have agreed to support, in all respects, the policy of the seventh section of the act establishing the circuit court of appeals (11 C. C. A. xv.) so far as practicable to do so, and to avoid closing the business of any defendant in a bill in equity by an interlocutory injunction, whenever an appeal is taken and a supersedeas bond may be allowed, except in peculiar cases, where justice clearly requires otherwise. But for this, a single judge, sitting in the circuit court, might, under some circumstances, do as much mischief as though no appeal had been provided for by the seventh section referred to. Therefore, when the draft decree and corrections of decree are passed me, as provided in rule 21 (11 C. C. A. cix.; 47 Fed. x.), the defendant may,

at the same time, pass me the appeal papers, with a supersedeas bond in such amount and with such sureties as may be agreed on, and I will simultaneously enter the decree and allow the supersedeas.